Next case for argument this morning is Deibel v. Hoeg. Mr. Catlin. It pleases the court. My name is Brad Catlin and I represent the appellant Jeff Deibel in this case. And, you know, the central question in the case is whether Mr. Deibel owned Hypro stock in May 2017 when the company was sold. The only evidence that the appellees have pointed to that he had not owned the stock is an interrogatory answer from a defendant who said that he did not know the factual basis for that answer and who gave other interrogatory answers that he admitted were obviously false. The facts show that Hypro failed to keep records of its corporate ownership for 25 years, has no record that it cancels Deibel shares. And so the question of whether Deibel owned the stock and whether it was validly canceled should be tried to the jury. And if the jury finds that Deibel owned this stock, the appellees owed him fiduciary duties and could not keep the proceeds from the sale of the business to themselves and had to share those proceeds with him. I'd like to go into a little detail about why the nature of why there's a jury question in this case, a genuine issue material fact regarding whether the stock was canceled. You had this company that was started in the in the early 90s and there was a fallout between the founders and Mr. Deibel was forced out of the company and a lawsuit. Counsel, it sounds to me like you're arguing the merits, but this case was resolved in the this case was decided. Well, I agree, Your Honor. And the the the limitations grounds, the district court in this case made, in my mind, a mistake when dealing with this on limitations grounds, because the district court said whether Deibel owned the stock or not, whether Hypro actually canceled it or not, started the running of the statute of limitations. And I think that was a flawed outcome. And this is why if he did own if they if they did validly cancel the stock back then, he doesn't have a claim. However, if Mr. Deibel. Counsel, that's the problem. You say if they validly canceled the stock back then, your client doesn't have a claim. No, the statute of limitations applies to things that are valid and invalid. If the stock was canceled, then your client lacks a claim. The contention that the cancellation was invalid doesn't overcome the statute of limitations. That's the central point in this case. And it seems to me what you need to address. Well, the the question of whether they actually canceled is definitely a question that should be tried to the jury. The validity and why they threw that in there deals with the ultra-veras aspect of that. It's something I can get I want to get to later. I've said this once and that's it. Your contention, which is central to your brief and apparently to your argument, that the cancellation was a violation of state law, does not get around the statute of limitations. It just tells you when the claim accrued, which is long ago. Well, if we're going to talk about the ultra-veras aspect of it, if it was actually canceled, I think if you look at the cases I cited under Indiana law, such as the board of commissioners of Tippecanoe County versus Lafayette case. Let me put this differently. I gather High Pro was a subchapter S corporation. Is that true? I believe so. All right. If High Pro was a subchapter S corporation and your client believed he was a stockholder of that corporation, he was obliged to report that to the IRS every year. I take it it is undisputed that in 1998 your client stopped reporting to the IRS that he was a shareholder and liable for any part of the income of High Pro. Is there any dispute about that? I think the facts are that it's true, your honor, that he stopped reporting to the IRS that he was a shareholder of High Pro because the IRS, and it's in the record, had already made an inquiry about this and knew that there was a factual dispute between the parties and was not going to get in the middle of that factual dispute. A factual dispute does not excuse somebody from reporting income of a subchapter S corporation. The lack of being a shareholder is such an excuse. But the he no longer reported that he was a shareholder. So as of 1998, he is not telling the IRS that he is a shareholder in High Pro. Because he had already told them that he was and there was a material dispute between that that the IRS acknowledged. Now, what Mr. Dybul did do, though, is he communicated to High Pro that he disagreed with their idea that they could cancel his shares. And the fact that if they, if High Pro, if there's a genuine issue of fact is whether he didn't cancel his shares, and he was still a shareholder, he might have tax issues that he already knows he's going to have to deal with later. But the fact is that he's an owner of the company, then under Indiana law, they still owe him the other shareholders and officers and directors owe him fiduciary duties. Now, the reason the trial court erred in dismissing this on the statute of limitations grounds is because if he was still a shareholder, then they continually owe these fiduciary duties to him, which is why this is akin to the situation that I said in my briefs dealing with the the trespass claims, things like that, where you have a repeated violation of somebody's rights, and ongoing rather than a discrete set of violations. In this case, Mr. Dybul for years wasn't allowed to participate as a shareholder and exercise his rights as a voter, he wasn't given notice. And he would have had an opportunity over all those years to challenge those individual decisions. And he didn't do that. He can't complain about that now. However, he was still a shareholder in the company, if they did not cancel his shares, which is what we're saying there's a genuine material fact about. And in his position as a shareholder, and then owing him fiduciary duties, it extended to the splitting of the proceeds of the sale of the company with him. And so these the fact that you had these continuing repeated violations, new discrete injuries that led to these new individualized discrete damages. That's why the trial court erred in finding that he knew about this dispute back in the 90s. And therefore it was his obligation to resolve the dispute back. Did he continue to report that on his tax filings? He reported on his tax filings through 1998. When he had the communications with the IRS, and the IRS knew about the situation, and told him, if the situation changes, we'll address it with you then. Which means? Which means that depending on the outcome of this case, he's going to have an issue to address with the IRS that he's aware of and is prepared to deal with. So it didn't resolve anything. It just said it may or may not have been canceled. That's exactly right. Both parties communicated the issue to the IRS. The IRS was aware of the issue. And basically it was did not feel it was in a position to resolve that particular issue. The communication at issue that I'm talking about is is in the record as one of the exhibits in the trial court record. So I think that one of the things that the trial court talked about was the application of the discovery rule to this particular situation. And the discovery rule does apply when you have a continuing series of events that all lead to one single wrong. The kind of thing that you have when you have somebody who has been, I think the case that I cited in the brief, somebody who had a medical device installed in him, and then the doctor didn't install the right one, made a treatment plan as a result of that, and the court said, you know, this whole series of events leads to one wrong. That's not the situation that we have here because it's a type of continuing wrong. This is more akin to the type of situation that the Supreme Court dealt with in Ledbetter, and you deal with in Morgan, and we deal with in these trespass cases where you have a continuing series of events that are all distinct. Do you have any Indiana case supporting the proposition that wrongful cancellation of shares permits suit at any time in the future? I don't have any case that deals with this, because I don't think there's any Indiana case. Do you have any similar case from any other state? If I understand it correctly, Indiana is a Model Business Corporations Act state, so there are 36 other states that are operated the same way. Do you have any case from any of the other 35? Well, Your Honor, I don't have any case, and I'm not making the case here that wrongful cancellation of the stock allows them to bring the case now, unless the UltraViris Act applies. What I am focusing on is the fact that there's a genuine issue as to whether there was a cancellation at all. If there's a genuine issue as to whether there's a cancellation at all, though we don't get into the issue of whether there's a wrongful cancellation, because if they wrongfully canceled and they had the corporate ability to do that, Mr. Deibel has no claim. I will not stake my claim on that ground, because it's a baseless ground, Your Honor. An issue that I wanted to talk about that we haven't addressed yet, though, is some of the affirmative offenses that defendants have raised, such as estoppel and waiver. In those affirmative offenses, they're saying that it's basically too late. Other reasons, other than statute of limitations for my client to make these claims. Both of those, I think, can be dealt with on a simple basis. Both of them require that Mr. Deibel violate a duty to speak and tell the defendants about what his claims are. In this case, he did tell them what his claims are, and so the question is not, did he have a duty to speak, but did he have a duty to continually speak over time? And there's no such basis for such a duty. Since those are equitable defenses, the defendants, in order to get the equity they're seeking, must have done equity. In this case, they didn't, because they just took his property without paying him for it or doing anything for it. And so I think that is important to address as well. The other thing I think is important to think about when we're talking about the continuing wrong and whether he can bring his claims now, and it's important to distinguish from the cases that the appellees have cited, are the kinds of cases they're citing for the purposes of saying that the DISCOVER rule applies to this situation. The first one, the Meisenhelder case, deals with a breach of contract. The court said the guy knew of the breach in 1987, therefore it was too late when he filed his claim 13 years later. Same thing in DiMaggio, that somebody knew the property was abandoned, the partnership interest was abandoned, and therefore it was too late more than six years later to bring a claim. And then with the DiMaggio case, you had the same issue, where you had a single incident that happened, and then the damages all flowed from that. In this case, we think there's a genuine issue of factors where that single incident happened. Your honors, I reserve two minutes for rebuttal. I have two minutes left, so I will stop speaking right now. Thank you, Mr. Catlin. Ms. Betz. Good morning, your honors. May it please the court, I am Tracy Betz on behalf of the appellees. The question here today is not whether Mr. Dybul was a shareholder when Hypro sold in December 2017. He wasn't, and the record is undisputed on that point, but it doesn't matter. The question here today is when did Mr. Dybul's claims against the appellees accrue? That is, when did he know that he had claims against the appellees where they had refused to treat him like a shareholder since 1993? And the answer to that question is undisputed. Dybul absolutely, indisputably had knowledge in 1993. He was reminded again in March 1994 and in April 1995, and then he himself acknowledged it in writing in February 1997. So on each of those dates, Mr. Dybul knew that Hypro had purported to cancel his shares, and they had not treated him like a shareholder since 1993. And he also knew they had no intention of ever doing so again. Yet he waited. Sure, he complained to the appellees for a few years between 1993 and 1998, but he did absolutely nothing to protect his legal rights. And that's important because the statute of limitations, and the statute of limitations for a breach of fiduciary and a conversion claim is two years. So while he waited, his accrued claims expired more than 20 years ago. And then, even then, after those claims expired, what did he do? He stayed silent. He was absolutely silent for 20 plus years. He didn't make any more claims of ownership to Hypro. He didn't allege any more wrongful actions to Hypro. He didn't pay any taxes. He didn't tell the government he was an owner. He disappears, never to be heard from again until, of course, Hypro sells for tens of millions of dollars. So now, after all those years of absence, now Mr. Dybul is back on the scene, and he's demanding to be paid out millions of dollars. And the interesting part is he is now asserting the very same claims that his own lawyer told him in 1995 that he should assert. And those same claims that he himself acknowledged he had in 1997. Dybul's claims in this case are the result of a single alleged harm that all stemmed from a 1992 event, and that harm being the deprivation of his rights as a shareholder. And again, it's indisputable and undisputed that he knew of the deprivation of those rights because he was informed in March 93, May 93, March 94, April 94. He was told on all those occasions, Hypro canceled your shares. Hypro doesn't think you're a shareholder anymore. They're never going to treat you like a shareholder again. And in fact, there's no confusion on this point because Hypro followed through with that very fact that they were never going to treat him like a shareholder again. They never again invited him to a meeting. They never again gave him any financial information. They never again gave him a K1 and they made zero distributions to him. He admits all of this. Speaking of the forms, do you agree that Hypro was a subchapter S corporation? Yes, your honor. Okay, thank you. Yes. He knew in the 90s that they no longer considered him to be a shareholder. And he did nothing. He didn't file a lawsuit. He didn't. In fact, he tells us he considered it. He thought about filing a lawsuit in the 90s and he was told by at least one lawyer that he should, but he didn't. He didn't until 2018, long, long after any claims accrued. And the mere fact that that's irrelevant. Doe versus United Methodist Church tells us that for a cause of action to accrue, it's not required that a plaintiff actually know the full extent of its damages. The plaintiff only has to be aware that a defendant caused it injury. Well, not only was Dibal aware because he saw and because he was told, but he actually even received legal advice to that effect in 1995. So his cause of action accrued generous generously no later than that date. So Mr. Dibal attempts to save his case from summary judgment, and he relies on three very flawed arguments. And that is number one, there's a dispute as to whether the shares were actually canceled. Number two is the continuing wrong doctrine. And number three, that the act and canceling the shares was ultra various. Well, this act was not ultra various. It this Indiana business statute actually allows a corporation to cancel shares. It's supported under Indiana law to do so. So the question is here, if a corporation can do something, is that an ultra various act? The answer is no. If a corporation is allowed to do something, if it does it, even when it's improper, that does not make it an ultra various act. We know that the Indiana corporate statutes allow the cancellation under multiple different statutes. It allows for the acquisition of shares under multiple statutes. And there's nothing in HIPRO's charter that says that it cannot. So here, HIPRO acquired its shares from Dibal, and it canceled him. That act is permitted by statute. So under Dibal's theory, any act taken by a corporation that violates Indiana law or the Articles of Incorporation would be ultra various. And we know that's just not true. To be ultra various, it has to be something more than a tort. It has to be that no corporation under any circumstance is permitted to do. So here, HIPRO was permitted to cancel shares. If in doing so, that was a breach of its fiduciary duty to Dibal, then HIPRO committed a tort, not an ultra various act. Second of all, we know that ultra various acts are controlled by the statute of limitations, and the Miami nation of Indiana tells us that. Thus, his claims still would be barred. The second argument that Mr. Dibal attempts to get around summary judgment with is whether or not the shares were actually canceled. First, your honors, it does not matter when the shares were canceled or whether or not they were at all. The question is, when did his claim accrue? When did Mr. Dibal have actual notice of the act that gave rise to these causes of action here? And again, he has admitted he had notice. In 1997, he wrote a letter calling out HIPRO's quote, conversion of his shares. His actual word was conversion, a claim he's alleged in this lawsuit. And now Mr. Dibal is asking the court to speculate on a number of things to create a disputed issue of fact as to whether the shares were canceled or when they were canceled. But that is all he offers here is speculation. And that pure speculation is met with the undisputed evidence that HIPRO's attorney in the 90s told them that the shares were a part of a settlement deal. The HIPRO's attorney in the 90s told HIPRO they could cancel the shares if Mr. Dibal didn't return them. That Mr. Dibal did in fact never return shares. That HIPRO's counsel informed Dibal's counsel on multiple occasion that Mr. Dibal was no longer a shareholder. That Mr. Dibal's own counsel told him that he was never a shareholder. The IRS told Mr. Dibal that HIPRO did not consider him to be a shareholder. So Mr. Dibal wants us to ignore this parade of evidence to show both actual and constructive knowledge that he was notified that HIPRO had canceled the shares or was planning to treat him as such. And he wants to ignore that despite that he does not offer a single shred of evidence, not a single document, not a single bit of testimony to support his inferences that perhaps they never did cancel those shares. But regardless of whether they were canceled on August 31st, or thereafter, it is undisputed that they were canceled before 1994. And another point about Mr. Dibal's request for speculation here that cannot be ignored is that he actually criticizes the memory of Mr. Larry Hogue's events, the memory of his events from 1992 when he was testifying in 2019 some 27 years later. So here Mr. Dibal's using his own delay as a sword, a delay that he caused. And he asked this court to find that Mr. Hogue is not credible and support an inference that the reason Mr. Hogue doesn't remember certain facts is because they never happened. Well, not only is that improper to weigh the credibility of a witness on summary judgment, it completely ignores that Mr. Hogue unequivocally testified that HIPRO did in fact cancel the shares, and that there is no evidence otherwise, and that after 1993, HIPRO never again treated him as a shareholder, a fact that Mr. Dibal was well aware of. So whether or not it actually happened, and the undisputed evidence shows that it does, it doesn't matter because he was well aware that they were treating him as if it had, and his claim did accrue then. Finally, the continuing wrong doctrine just simply does not apply to this case. Again, Mr. Dibal admits that he knew they canceled his shares and that they stopped treating him as a shareholder, but he calls this a repeated and continuous injury. So it doesn't matter when he learned about his injury because each time he was snubbed as a shareholder, he was injured again. That's just wrong. He wasn't injured by an intermittent recurring or continuing nuisance like the oil spills or the odor cases, and the Title VII and the Title VIII cases he relies on just simply do not add up here. Here, every single injury- Ms. Betz, I have the same question for you that I had for Mr. Capra. Indiana is a Model Business Corporations Act state, and so we need to turn to state law to figure out when a claim accrues or what is a continuing violation. Has Indiana, or to your knowledge, any of the other 35 similar states, ruled on the question whether wrongful cancellation of shares produces a continuing wrong? Go ahead. Thank you, Your Honor. I appreciate the question. I do not have a case that deals with shares, but I do have two cases, Your Honor, that are very much on point because they deal with breach. One deals with a breach of a fiduciary duty, and that is the Indiana Del Vecchio case. No, I'm not really interested in shares. There are an awful lot of close corporations, and 36 states is an awful lot of states. One would think that among the Model Business Corporations Act states, there would be some decisions on this question. Your Honor, we did not locate those decisions, which is why we looked to the Del where a plaintiff was alleging multiple breaches of fiduciary duty, and the court found that multiple breaches were the result of a single prior act, and that prior act is when the cause of action actually accrued in that case, when the plaintiff learned of that triggering act. That's just like in this case. Mr. Dybul admits that after 1993, he was repeatedly denied access to records, meetings, distributions. All of those would be breaches, and he admits that he's ignoring all of those, and he only cares about this last one, and it's that act, the failure to share in the proceeds, that he says is a new cause of action, but the problem with that argument is that each of these breaches stem from that single act of the subsequent act, and the used case is also instructive, and it's cited by Mr. Dybul in his reply brief. In that case, the court held while the effects of a triggering event giving rise to a claim may continue to have an impact on a plaintiff, it declined to find a continuing wrong merely when a defendant has maintained its position. Well, that's exactly what we have here. We have the effects of a triggering event that gives rise to continued impact to Mr. Dybul. He's no longer being treated as a shareholder. He's feeling that continued impact, but it's purely because a defendant has maintained its position here. It's maintained that he is no longer a shareholder, so concluding otherwise would be to hold that there's essentially no statute of limitations in a case like this because the continuing wrong is the failure to treat him like a shareholder, so the statute of limitations period would not begin until the end of the wrongful act, which would be what if the company had never sold? Never. He can sue any time whatsoever for an act that took place in 1992. Here, we have a plaintiff that learned he was harmed in 1993, 1994, and in 95, a lawyer told him he had a claim. He waited more than 20 years to file a lawsuit, and it's too late. Summary judgment should be affirmed. Thank you, Your Honor. Thank you, Ms. Betz. Anything further, Mr. Catlin? Mr. Catlin, you need to unmute. I apologize, Your Honor. Just a couple of comments, Your Honor. The first question is, who owns the shares in May of 2017? If they weren't canceled, then Mr. Dybel owned them, and it is simply wrong to say that if he owned those shares, that it is too late for him to get the proceeds from that sale. That's the central issue here. If he didn't own those shares, if they had been canceled in the 1990s, Mr. Dybel has no claim. It's barred by the statute of limitations. All these other issues about too early or too late or notice, they're a bit of a red herring because it is simple. If he owned the shares in 2017, then he should be able to enjoy the proceeds of the sale. If he didn't own the shares, he should not. If the only evidence that the defendants can point to to show that there was actually a vote of the HIPRO board that actually canceled the shares is somebody's interrogatory answer, where he admits he doesn't know the factual basis for it and admits that many other things in those interrogatory answers were false or obviously wrong or that are contradicted by documentary evidence, then his credibility is an issue of fact for the jury that should not be resolved on summary judgment. Unless there are any further questions, I don't have anything else to say. Thank you very much. The case is taken under advisement.